## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ALOFT MEDIA, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:07-cv-355** |
| | § | |
| **ADOBE SYSTEMS INC., and** | § | |
| **MICROSOFT CORPORATION,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent Nos. 7,117,443

("'443 patent"), and 7,194,691 ("'691 patent").  In the above-styled cause of action, Plaintiff Aloft

Media, LLC ("Aloft") accuses Defendants Adobe Systems, Inc. ("Adobe") and Microsoft

Corporation ("Microsoft") of infringing various claims contained in these two patents.  The parties

have submitted a number of claim terms for construction.  Aloft has filed an Opening Claim

Construction Brief (Doc. No. 88) and a Reply Claim Construction Brief (Doc. No. 103).  The two

Defendants[1] have jointly filed a Responsive Claim Construction Brief (Doc. No. 102).  A *Markman*

hearing was held on June 19, 2008.  For the reasons stated herein, the Court adopts the constructions

set forth below.

## I.  OVERVIEW OF THE PATENTS

The '443 patent was issued on October 3, 2006, and the '691 patent was issued on March 20,

2007.  These two patents are sibling patents that share the same specification.  The patents are

generally directed at a computer program product that displays a graphical user interface for use in

---

[1] The Court will refer to both Defendants, Adobe Systems, Inc. and Microsoft Corporation, as "Defendants."  On July 25, 2008, Plaintiff Aloft Media, LLC and Defendant Adobe Systems, Inc. filed a Joint Motion to Dismiss the claims and counterclaims by and between them with prejudice, with each party bearing its own costs and expenses (Doc. No. 115).

association with a network browser to correlate, store, and manage Internet content for later off-line viewing.  As demonstrated by the parties in their presentations at the *Markman* hearing, a user browses Internet content through an external network browser that displays content associated with a uniform resource locator (URL).  While browsing, the user is able to pre-select an identifier through the patented product's graphical user interface.  After pre-selection of the identifier, the user can select Internet content displayed by the network browser, which is correlated with the pre-selected identifier and stored for later off-line viewing.  When the user desires to later view the stored content, the user accesses the appropriate identifier to locate the stored content.

Aloft has asserted claims 36 and 37 of the '443 patent and claim 21 of the '691 patent against Defendant Adobe.  Aloft has asserted claim 37 of the '443 patent and claim 21 of the '691 patent against Defendant Microsoft.  The parties have submitted claim terms for construction in each of the three claims asserted in this case.

## II.  APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  This intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one

of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*,

415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular

claim terms. *Phillips*, 415 F.3d at 1314.   First, a term's context in the asserted claim can be very

instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning

because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among

the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a

dependent claim adds a limitation to an independent claim, it is presumed that the independent claim

does not include the limitation.  *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part."  *Id*. (quoting

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).   "[T]he

specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive;

it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v.

Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299

F.3d 1313, 1325 (Fed. Cir. 2002).   This is true because a patentee may define his own terms, give

a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the

claim scope.  *Phillips*, 415 F.3d at 1316.   In these situations, the inventor's lexicography governs.

*Id*.  Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed

meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be

ascertained from the words alone."   *Teleflex, Inc.*, 299 F.3d at 1325.   But, "'[a]lthough the

specification may aid the court in interpreting the meaning of disputed claim language, particular

embodiments and examples appearing in the specification will not generally be read into the

3

claims.'"  *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)

(quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also*

*Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for

claim construction because a patent applicant may also define a term in prosecuting the patent.

*Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of

the specification, a patent applicant may define a term in prosecuting a patent.").

　　　Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in

determining 'the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting

*C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand

the underlying technology and the manner in which one skilled in the art might use claim terms, but

technical dictionaries and treatises may provide definitions that are too broad or may not be

indicative of how the term is used in the patent.  *Id*. at 1318.  Similarly, expert testimony may aid

a court in understanding the underlying technology and determining the particular meaning of a term

in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is

entirely unhelpful to a court.  *Id*.  Generally, extrinsic evidence is "less reliable than the patent and

its prosecution history in determining how to read claim terms."  *Id*.

　　　The patents in suit may contain means-plus-function limitations that require construction.

Where a claim limitation is expressed in "means plus function" language and does not recite definite

structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6.  *Braun Med., Inc.

v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  In relevant part, 35 U.S.C. § 112, ¶ 6

mandates that "such a claim limitation 'be construed to cover the corresponding structure . . .

described in the specification and equivalents thereof.'"  *Id*. (citing 35 U.S.C. § 112, ¶ 6).

Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id*.

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id*. A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id*. Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id*.

Also at issue is whether certain claims are indefinite. A claim is invalid under 35 U.S.C. § 112, ¶ 2 if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. The party seeking to invalidate a claim under 35 U.S.C. § 112, ¶ 2 as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). The test for indefiniteness is stringent – a claim is invalid as indefinite if it is not "amenable to construction." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). The definiteness requirement of 35 U.S.C. § 112, ¶ 2 "focuses on whether the claims, as interpreted

in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001) (citing *Solomon*, 216 F.3d at 1379).  It requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research*, 265 F.3d at 1375.  Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.*; *see also Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).

### III.  DISCUSSION

The parties present the following claim terms and clauses for construction: (1) the "content" terms, (2) the "wherein" clauses, (3) the "in a manner" clauses, and (4) other terms in which the parties have reached an agreed construction.

A.    The "Content" Terms

There are three "content" terms that are in dispute and are similar enough to each other to be construed in the same fashion.  The three terms appear as: (1) "Internet content associated with uniform resource locators (URLs)" in claims 36 and 37 of the '443 patent, (2) "content associated with uniform resource locators (URLs)" in claim 21 of the '691 patent, and (3) "selected content associated with at least one of the URLs" in claims 36 and 37 of the '443 patent.  Aloft takes the position that none of these terms require construction.  Defendants contend that the first two "content" terms should be construed as "documentation located at uniform resource locators (URLs)," and the third "content" term should be construed as "selected documentation located at a URL."

In support of its position, Aloft argues that the intrinsic record provides no basis to adopt

Defendants' proposed construction, and that "content" requires no construction because the term is used elsewhere as part of an agreed construction for claim 36 of the '443 patent.[2]  Defendants, on the other hand, initially argued that "content" must be construed because it cannot include the URL address.  RESP. AT 6.  However, Aloft has conceded that "content" cannot include the URL.  Quoting Aloft's Reply, "Defendants' entire argument, therefore, is directed to a non-issue.  In fact, the claim term at issue itself makes clear that there is a difference between 'internet content' and 'uniform resource locators (URLs).'  Plaintiff does not now and never has suggested otherwise."  REPLY AT 2.  The parties have therefore agreed that "content" cannot be understood to include URLs.  Nonetheless, Defendants maintain that the claim term, "content associated with URLs," requires construction.  Defendants parse the claim term into two parts: (1) "content," and (2) "associated with URLs."

With respect to "content," Defendants argue that the "specifications describe the material that is selected for correlation as 'documentation,' which includes 'web pages, articles, spreadsheets, slide shows, compressed documents such as files in Portable Document Format (.pdf), etc. and can even include multimedia files and streaming multimedia.'"  RESP. AT 7-8 (quoting '443 patent at 9:1-6).  In other words, Defendants argue that "content" is too broad,[3] and should be narrowed to the "documentation" that is disclosed in the specification.  Defendants point to multiple sections of the

---

[2] The parties have agreed that the construction of "any content selected during use of the network browser results in automatic correlation" will be "the user selected content is correlated without further user interaction."

[3] Defendants point to Aloft's infringement contentions as the source of their concern that "content" is too broad.  At the *Markman* hearing, Defendants also expressed concern that "content" could potentially encompass non-displayable information that "documentation" could not.  However, Defendants do not explain how the word "documentation" will resolve this concern.  A URL can just as easily reference a hidden document as it can hidden content.

specification that reference the word "documentation."[4]  Nonetheless, the Court agrees with Aloft.

Defendants cannot point to any specific language in the specification that defines "content" as

"documentation."   The mere fact that a word such as "documentation" appears in the patent's

specification is not sufficient to limit a claim term to "documentation."   It is well established that

"the claims of a patent define the invention to which the patentee is entitled the right to exclude."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  The claims reference the

word "content."  The parties have also agreed to use "content" as part of an agreed construction for

another claim term, which is an indication that "content" is not a confusing term.  The Court

therefore declines Defendants' invitation to construe and narrow the definition of content to

"documentation."

With respect to "associated with URLs," Defendants expressed concern at the *Markman*

hearing that this phrase may cause jury confusion and may be broad enough to encompass non-

displayable information at the URL, or information not located at the URL.   For example,

Defendants are concerned with meta tag data or "whois" information.   Aloft responds that

information associated with a particular URL is often not displayed directly at the URL's address

nor is it located at the URL.  The Court agrees with Aloft.  Content referenced by a URL's address

is not necessarily displayed at the address itself.  In the context of a web page, for example, the

referenced content may not be displayed until a user selects a hypertext link that directs the network

browser to a subsequent URL address where the referenced content is displayed.  Furthermore, the

referenced content need not be physically located or stored at the same location as the URL address.

---

[4] For example, "[t]he documentation related to the selected URLs is then stored in the memory, as set forth in operation 608."  '443 patent at 9:1-2; *see also* '443 patent at 9:2-10; '691 patent at 9:4-13; '443 patent at 10:9-11; '691 patent at 10:11-13.

In other words, content referenced by a URL address can be stored separately from the URL address' storage location. Again, the claims reference "associated with," and the Court finds no basis to narrow its meaning to "located at." The Court also is not persuaded by Defendants' argument that "documentation located at URLs" is less confusing to a jury than "content associated with URLs." The Court therefore declines to construe and narrow the claim term "content associated with URLs," and each of its variations outlined above.

B.      The "Wherein" Clauses

There are four "wherein" clauses at issue. They appear in claims 36 and 37 of the '443 patent. Claim 36 recites four clauses that begin with "wherein," but only the first two clauses are at issue.[5] Similarly, claim 37 recites four clauses that begin with "wherein," but only the first two clauses are at issue.[6] Defendants contend that the wherein clauses at issue should be construed as means-plus-function limitations through the lens of 35 U.S.C. § 112, ¶ 6. Aloft responds that the wherein clauses are not subject to § 112, ¶ 6 and do not require construction.

At the outset, both parties recognize that the "wherein" clauses do not recite the word "means." A rebuttable presumption thus arises that these clauses are not subject to construction under § 112, ¶ 6. In other words, "the use of the term 'means' has come to be so closely associated

---

[5] The two "wherein" clauses of claim 36 are:
1.      wherein a user is allowed to pre-select one of the identifiers which is separate from the URLs;
2.      wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is separate from the URLs, and stored;

[6] The two "wherein" clauses of claim 37 are:
1.      wherein a user is allowed to pre-select at least one of the identifiers in the portion of the network browser graphical user interface to the side of the window in which the Internet content associated with the URLs is displayed, in association with the network browser;
2.      wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs, and stored;

with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that the use of a different formulation generally does not." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996). This presumption "can be rebutted if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant. . . . the focus remains on whether the claim as properly construed recites sufficiently definite structure to avoid the ambit of § 112, ¶ 6." *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998) (internal citations omitted).

Aloft does not appear to dispute the functional nature of the four "wherein" clauses, but argues that "even if the 'wherein' clauses can be said to recite functions, claims 36 and 37 also recite sufficient structure in the form of 'computer code' to perform the functions such that § 112, ¶ 6 does not apply." ALOFT'S OPENING BRIEF AT 11. In other words, Aloft points to the elements preceding the "wherein" clauses that disclose "computer code" for performing certain functions, and asserts that such "computer code" also serves as the structure for performing the functions disclosed in the "wherein" clauses. Defendants argue that the "wherein" clauses are purely functional, do not recite any structure, and do not reference either of the "computer code" elements above. Defendants contend that the "wherein" clauses do not reference the "computer code" elements because the "wherein" clauses are not directly connected to the "computer code" elements and do not bear any relation to those elements either. Accordingly, there are two questions to be decided: (1) whether the "wherein" clauses reference the "computer code" elements above, and (2) whether either of the "computer code" elements disclose sufficient structure to perform the functions recited by the "wherein" clauses.

1.      Whether the "wherein" clauses reference the "computer code" elements

The Court recognizes that the claim language at issue is not a model of clarity.  Nonetheless, there are features embedded in the claim language that provide sufficient guidance as to whether the "wherein" clauses should reference the "computer code" elements above.

Defendants argue that the "wherein" clauses do not reference the "computer code" elements because there is nothing linking the clauses to the elements above.  In other words, the "wherein" clauses do not expressly refer to either "computer code" element as the structure performing the functions recited by the "wherein" clauses.  Defendants cite to *Kothmann & Kothmann, Inc. v. Trinity Indus., Inc.*, 287 F. Supp. 2d 673, 698 (S.D. Tex. 2003) as an example of a claim with "wherein" clauses that do expressly refer to the structural elements above.[7]  The court in *Kothmann* found that the claim's "wherein" clauses describe how the structural components interact to perform the functions recited, and thus held that the "wherein" clauses recite sufficient structural limitations in themselves.  *Kothmann*, 287 F. Supp. 2d at 697-98 ("Both of the "wherein" limitations use structural language to describe the placement of the various parts of the invention. . . . This is a structural limitation.").  In comparison to *Kothmann*, Defendants argue that because the "wherein" clauses in this case do not expressly refer to the structural elements above, it cannot be held that they reference either "computer code" element.

---

[7] The claim at issue in *Kothmann*, claim 3 of the '820 patent, claimed:
>   An energy-absorption system for positioning along a roadway to absorb the energy of an errant vehicle, the energy-absorption system comprising:
>       an impact head;
>       an angled cutter; and
>       an elongated cuttable member horizontally mounted between two parallel guardrails;
>       wherein the energy absorption system is positionable along a roadway to cooperate with the upstream portion of a roadside hazard; and
>       wherein the impact head is in operational connection with the cutter and the cuttable member such that the impact of an errant vehicle with the impact head will cause the cutter to cut at least a portion of the cuttable member to absorb the impact energy of the errant vehicle.

11

The Court acknowledges that the "wherein" clauses in *Kothmann* recite structural limitations that do not appear in the "wherein" clauses in this case.  Even so, the Court cannot agree with Defendants that the "wherein" clauses at issue do not reference the "computer code" elements above.  While they do not expressly refer to the "computer code," the "wherein" clauses do reference specific items that are defined or introduced in the "computer code" elements above.  For example, the first "wherein" clause of claim 36 refers to "one of the identifiers."  The only definition of "the identifiers" found in this independent claim is in the second "computer code" element, which recites, "computer code for displaying a plurality of identifiers in a window separate from the window in which the content is displayed."  Without consulting this "computer code" element, it would be impossible to ascertain what "identifiers" the "wherein" clause is referring to.  Similarly, the second "wherein" clause of claim 36 refers to "the network browser," which is defined in the first "computer code" element.  That element recites, "computer code for working in conjunction with a network browser window associated with a network browser for displaying Internet content associated with uniform resource locators . . . ."

Defendants also argue that the "wherein" clauses cannot reference the "computer code" above because the two "computer code" elements only recite code for displaying graphics on a screen.  In contrast, the "wherein" clauses describe core functions performed by the computer program product, such as allowing the user to pre-select identifiers or correlating selected content with pre-selected identifiers.  *See* Resp. at 19-20.  Defendants are correct that the second "computer code" element, "computer code for displaying a plurality of identifiers . . ." likely refers to computer code that displays graphics, such as identifiers on the screen.  However, the first element, "computer code for working in conjunction with a network browser window associated with a network browser for

12

displaying Internet content associated with uniform resource locators (URLs) during network browsing" cannot be read to describe computer code displaying Internet content on a screen.[8] Instead, it is more likely for the network browser to display Internet content on the screen, as one of the core functions for a network browser is to display Internet content.  This leaves the "computer code" in the first element to perform the broad function of "working in conjunction with a network browser."  This broad functionality can very well encompass the core functions recited in the "wherein" clauses below.  The "wherein" clauses can therefore refer to either the first "computer code" element or to both "computer code" elements if the computer code were written to perform both functions of "working in conjunction with a network browser" and "displaying a plurality of identifiers."

It is noteworthy that Defendants do not contend that the third and fourth "wherein" clauses of claim 36 and the third "wherein" clause of claim 37 should be construed pursuant to § 112, ¶ 6. Given the similarity in format between these wherein clauses and those directly above them, there is no reason to construe the first two "wherein" clauses as governed by § 112, ¶ 6 and those below them as not governed by § 112, ¶ 6.  Defendants offer no explanation as to why the "wherein" clauses they identify should be treated differently from the remaining "wherein" clauses.  For these reasons, the Court finds that the "wherein" clauses in claims 36 and 37 of the '443 patent effectively reference the "computer code" elements above.

2.      Whether the "computer code" elements disclose sufficient structure

The second question is whether either of the "computer code" elements disclose sufficient

---

[8] Defendants argument would be stronger if a comma were placed immediately before "displaying Internet content." As no such comma exists, the first "computer code" element cannot be read to perform the function of displaying Internet content.

structure to perform the functions disclosed in the "wherein" clauses.  At the *Markman* hearing on June 19, 2008, Defendants argued that the first "computer code" element, "computer code for working in conjunction with a network browser," does not disclose sufficient structure because it does not provide any useful information to one of ordinary skill in the art.   In other words, Defendants contend that the first "computer code" element only provides an introduction to the claim.  Defendants presumably would argue that the second "computer code" element, "computer code for displaying a plurality of identifiers," is not structurally sufficient because it recites a structure for displaying graphics on a computer screen, which cannot readily perform the functions recited in the "wherein" clauses, such as allowing a user to pre-select one of the identifiers.

The Court acknowledges that it is not in a position to rewrite claims.  *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language."); *see also K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").  Having found that the "wherein" clauses reference the "computer code" elements above, however, claim 36 properly reads, "computer code for working in conjunction with a network browser . . . wherein a user is allowed to pre-select one of the identifiers."   In other words, it is proper to read claims 36 and 37 as having "computer code" for performing the specific functions recited in the "wherein" clauses.  Reading the claims in this manner does not rewrite the claim language; instead, it gives effect to the "wherein" clauses' reference to the "computer code" elements above.

Furthermore, a claim that recites "computer code" for performing a specific function is analogous to a claim that recites a "circuit" for performing a specific function.  Specifically, "computer code for working in conjunction with a network browser . . . wherein a user is allowed

14

to pre-select one of the identifiers" is akin to the claim language, "a first circuit for monitoring a signal from the output terminal to generate a first feedback signal." *Linear Techs. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004). The Federal Circuit held that the term "circuit" used in that context connotes sufficient structure to one of ordinary skill in the art. *Id.* ("Thus, when the structure-connoting term 'circuit' is coupled with a description of the circuit's operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art, and § 112 ¶ 6 presumptively will not apply.") (citing *Apex*, 325 F.3d at 1373). Similarly, when the structure-connoting term "computer code"[9] is coupled with a description of the computer code's operation, as provided by the "wherein" clauses, sufficient structural meaning is conveyed to persons of ordinary skill in the art.[10] The Court therefore finds that the "computer code" elements referenced by the "wherein" clauses recite sufficiently definite structure to avoid the ambit of § 112, ¶ 6. *See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998).

For these reasons, Defendants have failed to rebut the presumption that § 112, ¶ 6 does not apply to the construction of the "wherein" clauses. No further construction is necessary.

C.      The "In a Manner" Clauses

The "in a manner" clauses at issue appear in each claim asserted in this case, claims 36 and

---

[9] "To help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art. . . . Technical dictionaries, which are evidence of the understandings of persons of skill in the technical arts, plainly indicate that the term 'circuit' connotes structure." *Linear Techs. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (citing *CCS Fitness*, 288 F.3d at 1369; *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)). Similarly, The Authoritative Dictionary of IEEE Standards Terms defines "code," in part, as "(3) (A) (computer terminology) In software engineering, computer instructions and data definitions expressed in a programming language or in a form output by an assembler, compiler, or other translator." IEEE 100: The Authoritative Dictionary of IEEE Standards Terms 182 (7th ed. 2000).

[10] At the *Markman* hearing, Defendants recognized that if the claim language recited, "computer code for allowing a user to pre-select at least one of the identifiers," there would be sufficient structure and detail to avoid the application of § 112, ¶ 6.

37 of the '443 patent, and claim 21 of the '691 patent.  The three "in a manner" clauses are all directed at describing the manner in which content that has been selected by a user is to be correlated with some sort of identifier in order to organize the content.  Although each clause describes this correlation function, the three clauses are written using slightly different language.[11]  Defendants contend that these three "in a manner" clauses are indefinite, which renders them invalid pursuant to 35 U.S.C. § 112, ¶ 2.  Aloft responds that these clauses are not indefinite and that no construction is necessary to clarify their meanings.

A claim is invalid under 35 U.S.C. § 112, ¶ 2 if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention.  The party seeking to invalidate a claim under 35 U.S.C. § 112, ¶ 2 as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification.  *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003).  The test for indefiniteness is stringent – a claim is invalid as

---

[11] In context, the "in a manner" clause of claim 36 reads (emphasis added):

A computer program product embodied on a computer readable medium for displaying a network browser graphical user interface for storing content in association with a network browser, comprising: . . .

wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier *in a manner* that is dependent on a selection of the pre-selected identifier which is separate from the URLs, and stored;

In context, the "in a manner" clause of claim 37 reads (emphasis added):

A computer program product embodied on a computer readable medium for displaying a network browser graphical user interface, comprising: . . .

wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier *in a manner* that is based on the pre-selected identifier which is distinct with respect to the URLs, and stored;

In context, the "in a manner" clause of claim 21 reads (emphasis added):

A computer program product embodied on a computer readable medium for use in association with a network browser, comprising: . . .

computer code for correlating selected displayed content with the pre-selected identifier *in a manner* that is dependent on the pre-selected identifier which is distinct with respect to the URLs.

indefinite if it is not "amenable to construction." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  The definiteness requirement of 35 U.S.C. § 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001) (citing *Solomon*, 216 F.3d at 1379).  It requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research*, 265 F.3d at 1375.  Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted."  *Id.*; *see also Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).

Defendants attack the "in a manner" clauses for indefiniteness because they contend the specification does not disclose how to practice a limitation recited in the claims.  The "in a manner" clauses appear to state that selected content is correlated in a manner that is dependent or based on a pre-selected identifier.  However, the specification does not disclose how the manner of correlation should depend on the pre-selected identifier or its selection.  Defendants therefore argue that the "in a manner" clauses render these claims indefinite.  To better understand the basis of Defendants' argument, it is useful to take a closer look at the specific claim language of these clauses.

The "in a manner" clause of claim 36 recites, "selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is separate from the URLs."  Defendants contend that the plain and ordinary meaning of this clause recites three limitations as to how correlation is to be performed: (1) selected content is to be correlated with the pre-selected identifier, (2) the manner of correlation depends on the selection of the pre-selected

identifier, and (3) the pre-selected identifier is separate from the URL.  Defendants focus on the second limitation and assert that the specification does not discuss how the manner of correlation should depend upon the selection of the pre-selected identifier.  Defendants further maintain that the second limitation requires that the manner of correlation change, depending on what the user has selected as the pre-selected identifier.  Defendants assert this is consistent with the ordinary meaning of "dependent on" and "based on."[12]

Aloft, on the other hand, denies that the "in a manner" clauses require the manner of correlation to change, depending upon the pre-selected identifier.  Similarly, Aloft denies that the clauses provide for three separate limitations.  Instead, Aloft contends that the "in a manner" clauses should be read as a whole, and when read as a whole, only two limitations are recited: (1) the manner of correlating the selected content is based on the pre-selected identifier, and (2) the pre-selected identifier is separate from the URL.  As the manner of correlation need not depend upon the pre-selected identifier, Aloft maintains that there is no need for the specification to discuss how the manner of correlation should depend on the pre-selected identifier.

The Court agrees that by reading the claim language this way as a whole, the key phrase, "in a manner that is dependent on a selection of the pre-selected identifier," acts only to reinforce and clarify the preceding phrase, "is correlated with the pre-selected identifier."  This is consistent with Aloft's position that the manner of correlation need not change, depending on the pre-selected identifier.

A significant portion of the prosecution history specifically addressed the "in a manner"

---

[12] The dictionary definition of "dependent" is "determined or conditioned by something else."  Webster's Third New International Dictionary 604 (8th ed. 1981).

clauses and how they were ultimately inserted into the claims at issue.  Prior to the U.S. Patent and

Trademark Office's third Office Action dated April 20, 2006, the claims at issue did not contain the

"in a manner" clauses.  For example, claim 21 (currently claim 37 of the '443 patent) recited,

"wherein after pre-selection, selected content . . . is correlated with the pre-selected identifier and

stored; wherein the pre-selected identifier is distinct with respect to the URLs."  Amendment C at

5 (Doc. No. 102-9).  The examiner rejected the above claim language as obvious due to Microsoft

Internet Explorer v.6 and the Scullard reference, US 2002/0184095:[13]

> IE does not specifically teach that the user is allowed to manually enter the pre-
> selected identifier which is non-inclusive of any portion of the URL.  However,
> Scullard teaches the user is allowed to manually enter the pre-selected identifier,
> which is non-inclusive of any portion of the URL ([0008]; [0009]; [0014]; [0018]).
> Therefore, it would have been obvious to one of ordinary skill in the art at the time
> of the invention to include the teaching of Scullard in the invention of IE in order to
> provide the users with the flexibility in organizing the sites visited.

Third Office Action at 3 (Doc. No. 103-2).  The examiner also cited the correlation function

performed by IE 6, which correlates content to a folder with an identifier that includes the

corresponding URL.[14]  The examiner therefore understood the prior art to have disclosed a pre-

selected identifier that does not include the URL (Scullard) and correlation of content that includes

the URL (IE 6).  The examiner believed that Amendment C of the patent application disclosed

similar features, even though the claim language recited in part, "selected content . . . is correlated

---

[13] The applicant provided the following background information regarding these two items of prior art:
> IE relates to a web browser <u>history</u> function, while Scullard relates to a web browser <u>favorites</u>
> function. . . . Specifically, web browser <u>history</u> functions *unconditionally* and *automatically* store *all*
> previously visited web sites, for the particular purpose of allowing a user to back track to *any*
> previously visited site.  In sharp contrast, web browser <u>favorites</u> functions allow a user to *selectively*
> and *manually* store visited web sites, for the particular purpose of allowing a user to quickly access
> *only favorite* sites.
Amendment D at 11 (Doc. No. 103-3).

[14] In reference to IE 6, the examiner cited, "*selection of element 20 and 22 of fig. 2, and selection of element of* [sic] *40
and 41 of Fig. 4 are stored in the folder 51 of fig. 5*."  Third Office Action at 3 (Doc. No. 103-2).

with the pre-selected identifier."

In response to the third Office Action, the applicant explained that the examiner's reference to IE 6 was misplaced, as IE 6 "will <u>unconditionally correlate the related content to a folder with an identifier that is specifically inclusive of the corresponding URL, at least in part</u>."  Amendment D at 18 (Doc. No. 103-3).  To clearly distinguish the claimed invention from the prior art, the applicant amended claim 21 (currently claim 37) to recite, "selected content . . . is correlated with the pre-selected identifier <u>in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs</u>."  Amendment D at 5 (Doc. No. 103-3).[15]  Thus, the applicant made clear that the correlation could not be unconditional to an identifier that includes the URL.

In his remarks for claim 1, the applicant did not indicate that correlation of selected content changes or is different, depending on the selection of the pre-selected identifier.  Rather, the applicant demonstrated how the claimed invention would assist in performing research for apples and oranges:

> In such case, the user may be allowed to manually enter an apple identifier and an orange identifier, <u>which is non-inclusive of any portion of any URLs</u>, etc.  The user may wish to first research apples.  In the context of the claimed invention, the <u>user</u> would first "pre-select" the identifier reflecting "apples." "[T]hereafter" or "after the pre-selection," while browsing, the user may simply select content relating to "apples" for storage and correlation, in association with the "pre-selected identifier," <u>which is non-inclusive of any portion of the URLs</u>, etc.

Amendment D at 18 (Doc. No. 103-3).  The applicant thus made it clear that selected content would

---

[15] The applicant appears to have considered the following claim language interchangeable: (1) "selected content . . . is correlated with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is non-inclusive of any portion of the URLs, and (2) "selected content . . . is correlated with the pre-selected identifier in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs."  The applicant amended claim 1 (currently claim 1 of the '443 patent) with the first clause and amended claim 21 (currently claim 37 of the '443 patent) with the second clause.  The applicant only submitted remarks for claim 1, and extended those arguments to the remaining independent claims.  *See* Amendment D at 2, 5, 19 (Doc. No. 103-3).

simply be correlated with the pre-selected identifier, and the pre-selected identifier cannot be the URL.  There was no indication that the manner of correlation would change depending on the pre-selected identifier.

The examiner accepted the amendment to claim 21 that sought to clarify how the manner of correlation was to be performed.  More important, the examiner took the additional step to import much of the amended claim language for claim 1 into claim 20 (currently claim 36).[16]  It is clear that the examiner considered the amended claim language giving rise to the "in a manner" clauses at issue, and considered them acceptable.  Embedded in the presumption that an issued patent is valid is the premise that "one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents," has performed that duty.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008); *see, e.g., Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1379 (Fed. Cir. 2008) (patent examiner rejected claim 61 due to indefiniteness).  The remainder of the prosecution history and the specification provides no indication that the manner of correlation must change depending on the selection of the pre-selected identifier.

For these reasons, the Court finds that the "in a manner" clauses are amenable to a reasonable interpretation that does not render them insolubly ambiguous.  No further construction is necessary.

---

[16] The examiner offered the following statement of reasons for allowance:

> The prior art either alone or in combination doesn't teach the limitations of a user is allowed to pre-select one of the identifiers which is non-inclusive of any portion of the URLs; and wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is non-inclusive of any portion of the URLs, and stored in combination with the other claimed features.

Examiner's Amendment at 5 (Doc. No. 103-4).

D.      Agreed Terms

The remaining terms the parties have sought to construe are amenable to a joint construction agreed to by the parties.  The parties have agreed that both: (1) "selected content . . . is correlated with the pre-selected identifier" in claims 36 and 37 of the '443 patent, and (2) "correlating selected displayed content with the pre-selected identifier" in claim 21 of the '691 patent, should be construed as "a relationship is established between the selected content and the preselected identifier."  The parties have further agreed: (3) "any content selected during use of the network browser results in automatic correlation" in claim 36 of the '443 patent, should be construed as: "the user selected content is correlated without further user interaction."

## IV.  CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  The Court does not find that the "wherein" clauses of claims 36 and 37 of the '443 patent are means-plus-function limitations subject to § 112, ¶ 6.  The Court also does not find that the "in a manner" clauses of claims 36 and 37 of the '443 patent and claim 21 of the '691 patent are indefinite pursuant to § 112, ¶ 2.  For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 29th day of July, 2008.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

22

**Appendix A**

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 1. | Internet content associated with uniform resource locators (URLs) ('443 Patent: claims 36 & 37)<br><br>content associated with uniform resource locators (URLs) ('691 Patent: claim 21) | No construction is required. | documentation located at uniform resource locators (URLs) | No construction is necessary. |
| 2. | selected content associated with at least one of the URLs ('443 Patent: claims 36 and 37) | No construction is required. | selected documentation located at a URL | No construction is necessary. |
| 3. | selected content . . . is correlated with the pre-selected identifier ('443 Patent: claims 36 and 37)<br><br>correlating selected displayed content with the pre-selected identifier ('691 Patent: claim 21) | No construction is required. | a relationship is established between the selected content and the preselected identifier | Agreed Construction:<br><br>a relationship is established between the selected content and the preselected identifier |

| | U.S. Patent Nos. 7,117,443 & 7,194,691 | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 4. | in a manner that is dependent on a selection of the pre-selected identifier ('443 Patent: claim 36)<br><br>in a manner that is based on the pre-selected identifier ('443 Patent: claim 37)<br><br>in a manner that is dependent on the pre-selected identifier ('691 Patent: claim 21) | No construction is required. | These terms are indefinite. | These terms are not indefinite.<br><br>No further construction is necessary. |
| 5. | any content selected during use of the network browser results in automatic correlation ('443 Patent: claim 36) | No construction is required.<br><br>In the alternative, Aloft proposes the term be construed to mean: "the user selected content is correlated without further user interaction" | after selection, the user selected content is correlated without further user interaction | Agreed Construction:<br><br>the user selected content is correlated without further user interaction |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 6. | wherein a user is allowed to pre-select one of the identifiers which is separate from the URLs ('443 Patent: claim 36) | No construction is required.<br><br>Further, Aloft is of the view that none of the clauses is governed by 35 U.S.C. § 112, ¶ 6. | Defendants contend that this clause is a means-plus-function clause governed by 35 U.S.C. § 112, ¶ 6.<br><br>The function corresponding to this claim element is a user pre-selects one of the identifiers which is separate from the URLs.<br><br>The '443 Patent apparently attempts to disclose pre-selection in col. 8, lines 61-67 but does not disclose any structure in relation to this aspect, function, or embodiment. This disclosure is made in conjunction with a description of the operation of a network browser application which is described throughout the specification as operating alongside of the various embodiments which are also software running on a computer workstation. Thus, the only structure disclosed for implementing this aspect of the claim is at most a computer that is programmed to carry out the stated function. The specification does not disclose a specific algorithm for carrying out this function. | This clause is not governed by 35 U.S.C. § 112, ¶ 6.<br><br>No further construction is necessary. |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 7. | wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is separate from the URLs, and stored ('443 Patent: claim 36) | No construction is required.<br><br>Further, Aloft is of the view that none of the clauses is governed by 35 U.S.C. § 112, ¶ 6. | Defendants contend that this clause is a means-plus-function clause governed by 35 U.S.C. § 112, ¶ 6.<br><br>The functions corresponding to this claim element are, after the pre-selection, correlating the selected content associated with at least one of the URLs displayed during use of the network browser with the pre-selected identifier in a manner that is dependent on a selection of the pre-selected identifier which is separate from the URLs, and storing the selected content.<br><br>The '443 Patent apparently attempts to disclose pre-selection in col. 8, lines 61-67 but does not disclose any structure in relation to this aspect, function, or embodiment. This disclosure is made in conjunction with a description of the operation of a network browser application which is described throughout the specification as operating alongside of the various embodiments which are also software running on a computer workstation. | This clause is not governed by 35 U.S.C. § 112, ¶ 6.<br><br>No further construction is necessary. |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| | | | Thus, the only structure disclosed for implementing this aspect of the claim is at most a computer that is programmed to carry out the stated function. The specification does not disclose a specific algorithm for carrying out this function. | |

| | U.S. Patent Nos. 7,117,443 & 7,194,691 | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 8. | wherein a user is allowed to pre-select at least one of the identifiers in the portion of the network browser graphical user interface to the side of the window in which the Internet content associated with the URLs is displayed, in association with the network browser ('443 Patent: claim 37) | No construction is required.<br><br>Further, Aloft is of the view that none of the clauses is governed by 35 U.S.C. § 112, ¶ 6. | Defendants contend that this clause is a means-plus-function clause governed by 35 U.S.C. § 112, ¶ 6.<br><br>The function corresponding to this claim element is a user pre-selects at least one of the identifiers in the portion of the network browser graphical user interface to the side of the window in which the Internet content associated with the URLs is displayed, in association with the network browser.<br><br>The '443 Patent apparently attempts to disclose pre-selection in col. 8, lines 61-67 but does not disclose any structure in relation to this aspect, function, or embodiment. This disclosure is made in conjunction with a description of the operation of a network browser application which is described throughout the specification as operating alongside of the various embodiments which are also software running on a computer workstation. | This clause is not governed by 35 U.S.C. § 112, ¶ 6.<br><br>No further construction is necessary. |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| | | | Thus, the only structure disclosed for implementing this aspect of the claim is at most a computer that is programmed to carry out the stated function. The specification does not disclose a specific algorithm for carrying out this function. | |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
|---|---|---|---|---|
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| 9. | wherein, after the pre-selection, selected content associated with at least one of the URLs displayed during use of the network browser is correlated with the pre-selected identifier in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs, and stored ('443 Patent: claim 37) | No construction is required.<br><br>Further, Aloft is of the view that none of the clauses is governed by 35 U.S.C. § 112, ¶ 6. | Defendants contend that this clause is a means-plus-function clause governed by 35 U.S.C. § 112, ¶ 6.<br><br>The functions corresponding to this claim element are, after the pre-selection, correlating the selected content associated with at least one of the URLs displayed during use of the network browser with the pre-selected identifier in a manner that is based on the pre-selected identifier which is distinct with respect to the URLs, and storing the selected content.<br><br>The '443 Patent apparently attempts to disclose pre-selection in col. 8, lines 61-67 but does not disclose any structure in relation to this aspect, function, or embodiment. This disclosure is made in conjunction with a description of the operation of a network browser application which is described throughout the specification as operating alongside of the various embodiments which are also software running on a computer workstation. | This clause is not governed by 35 U.S.C. § 112, ¶ 6.<br><br>No further construction is necessary. |

| U.S. Patent Nos. 7,117,443 & 7,194,691 | | | | |
| --- | --- | --- | --- | --- |
| Ref. No. | Disputed Claim Terms | Aloft's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| | | | Thus, the only structure disclosed for implementing this aspect of the claim is at most a computer that is programmed to carry out the stated function. The specification does not disclose a specific algorithm for carrying out this function. | |